In session of court, Judge Martin and I are pleased to welcome our colleague Judge Bobby Baldock from the Tenth Circuit to sit with us today and Wednesday. He has helped us with the system. It's going to be one of those days. Judge Baldock is a senior circuit judge and the work of the judiciary would really grind to a halt if it weren't for the contributions of our senior circuit judges. They shoulder about 20% of the workload of the federal judiciary and they work for free. They would get paid. They'd be paid their salary no matter how much they work. We have a great tradition with senior judge service to the federal judiciary for which I think the Benton Bar ought to be really grateful. We're going to hear four cases this afternoon. You should know that we're familiar with your cases. We've read your briefs. We've read the authorities cited in your briefs. We've looked at at least the portions of the record that you cited and maybe even more of the record. We're likely to have some questions for you this morning. In the limited time that is available to you, feel free to get straight to the heart of your argument and raise particularly the highlights of what you want to raise before we are likely to ask you questions. The questions, of course, are for our benefit. Really, this hearing is for our benefit. If a case has been set for oral argument, it's because we probably have some questions because we hear a relatively small percentage of our appeals in oral argument. I think our visiting judges will tell you, though, that when we have a case that's set for oral argument, it probably needed oral argument. It means a good week of work for all of us up here. Please don't treat the red light as aspirational. When the red light shines, if you're answering a question from the court, of course, feel free to finish your answer, but do respect the red light and our time. If we need to give you more time, we will do so. So, our first case this morning is United States v. Couch. Mr. Vaughn. The questions in this case are whether this criminal forfeiture proceeding is an alternate remedy and whether Mrs. Carver has standing to intervene to assert her claim that the government has pursued an alternate remedy for three reasons. First, because of the plain language of the alternate remedy provision. Second, because of the overlap in the allegations of Mrs. Carver's complaints and the indictments. And third, because of the overlap of the funds at issue. Well, let's talk about those reasons. It seems to me that if we look at the plain language and we look at the for example, remedy, that it has really no application to a criminal proceeding. That remedy is not the business of a criminal action. A criminal action is about punishment. The remedy is the word that you would expect to use in a civil or administrative setting. No? Through the forfeiture and the restitution process, the criminal court has an opportunity to seize ill-gotten funds from the defendants and return those funds to victims of defendants' crimes. That is true, but aren't there plenty, isn't there plenty of case law that says that a criminal forfeiture proceeding operates quote, as a punishment against the party who committed the criminal acts? That's what our court has said. That's correct. An opinion I've wrote. That's correct, Your Honor. We cite the decision of Bisset quite often in our brief. The Bisset decision that stood for the proposition that the criminal forfeiture statute and the alternate remedy provision can exist in this type of fact pattern. Both of them can operate because the forfeiture and the restitution, like Your Honor said, is to punish the defendants. But the alternate remedy provision of the False Claims Act is to ensure that the relator of the information does not get foreclosed from making a relator share. And Bisset says that you can do both of those under this type of fact pattern. It's right on point. But the problem, the other problem with this case, it seems to me, is that the statute that regulates the criminal forfeiture proceeding we're dealing with actually provides for rights of intervention that do not include this intervention. Isn't that right? I mean, it spells... I don't understand Your Honor's question. Well, does it not allow for a person who holds a legal right, title, or interest in the property that was vested in the intervener or was superior to any right of the defendant at the time of the commission of the crime or a bona fide purchaser for value who was at the time of the purchase reasonably without cause to believe the property was subject to forfeiture. That's what the which involves the situation we have here today. Well, Your Honor, the alternate remedy provision provides an avenue for the relator to participate in that alternate proceeding and to apply the forfeiture statute, as Your Honor has quoted, to the detriment of the alternate remedy provision would render that other case, Your Honor, the government has seized, through the forfeiture proceeding, substantial sums of money. Well, Counsel, I understand that. What bothers me, is it your argument or your understanding that this is the only remedy your client has? She could still proceed with a K-10 action that she's already filed, can't she? Yes, Your Honor, she is proceeding in this case. So this is not the only way that she can proceed. The court has entered a default judgment against both of these doctors. Is it a default judgment or just default? A default, I apologize, a default. We have asked the court to enter a final default judgment with damages. But, Your Honor, they couldn't even afford to hire lawyers to answer the complaint. Well, my question is, it's a default that's been entered. Has there been a judgment in the default entered against? It has not, has it? The default has been entered. But not a judgment. Right. In November of 2017, to ask the court to levy damages against the doctors, consistent with the amount of damages that the government obtained. So you agree that this is not your client's only remedy. Now, going back to the question that Judge Pryor just asked you, because it seems that in looking at where it says no party can intervene in that, where it says that at the time of the commission of the acts that gave rise to the forfeiture of the property, that goes clear back to the criminal basis of this action. And your client did not have any rights, title, or interest at that time. She obtained, she has a right in the United States interest in that property. Not under this is where I'm going, though, because the language is pretty clear. You cannot intervene unless you had, and it lists two exceptions to that. And I don't see how you qualify under either one of those, and the False Claims Act doesn't get you there as far as I'm concerned. Your Honor, we disagree. The False Claims Act says. That's why you're here. The plain language of the alternate remedy provision allows the government to pursue its claim through any alternate remedy. You don't quarrel with the first part, it seems to me, of what Judge Baldock said, which is the two, which is what I was last asking you about. The two ways to intervene for the statute that regulates forfeiture proceedings does not benefit your client. You're instead trying to rely upon a different provision in the False Claims Act that speaks to alternate remedies, right? That's correct, Your Honor. And the problem with that is a criminal forfeiture proceeding, it seems to me, is not an alternate remedy. It's not a remedy at law. It's about, a criminal forfeiture proceeding is about punishment. How do I get around that problem? That was the first problem I brought up to you. Punishment that involves money. No, punishment that involves the proceeds of criminal activity, property involved in criminal activity. What case law can you point me to, what law can you point me to that would suggest that a criminal forfeiture proceeding could come within the scope of the meaning of a remedy in the False Claims Act? The Bissette decision, Your Honor. The Bissette decision allows both the forfeiture statute and the alternate remedy provision to operate under this exact same fact pattern. Judge, the alternate remedy provision provides the structure for a he, him, or later to operate in the event the government pursues that claim. In a civil proceeding. If they're pursuing an alternate remedy, if they're pursuing some kind of civil proceeding, maybe so. But that's not what's happening here. Your Honor, the plain language of the statute says any available remedy can be administrative. This isn't administrative. You would agree with that? Yes, Your Honor, I would. Okay. Now, if you compare the facts that we've alleged in the complaint and the overlap of the allegations in the criminal indictment, there's no question that there's significant overlap between those two documents. Further, the Fonzette issue, there is significant overlap as well. The complaint and all amendments to the complaint allege the submissions of false claims to defraud the government, Medicare and TRICARE. The second superseding indictment filed by the government specifies Medicare and TRICARE as health care benefits programs that have been defrauded. Now, where are you going to prove up the basis of all the requirements under a K-10 action? Your Honor, you're wanting to prove it up in the criminal case, right? That this was not publicly noticed or was not known before she filed her action. All of those elements that you need to prove that your client's entitled to receive money, your argument is you are entitled to do all of that in this criminal proceeding, right? Yes, Your Honor. Well, that's where we have problems with the difference between the remedy and the proceed, counsel. Excuse me. The statute says that if the government pursues an alternate remedy, then the relator shall have the same rights in that alternate proceeding as they would have had in the K-10 proceeding. Okay, now help me figure out with your argument, you have the False Claims Act where you're arguing any remedy, alternate remedy, and you have the criminal provision that says no intervention can be had except for these two exceptions, and those have to have arisen at the time of the fraud. So your argument is that the False Claims Act takes precedence over the criminal act. No, Your Honor. I'm arguing that the alternate remedy provision gives Mrs. Carver standing for a limited purpose to intervene in the forfeiture proceeding to assert her relator's share. The criminal court heard seven weeks of trial in this case, heard a number of different witnesses. They are best situated to determine whether or not Mrs. Carver is in fact a qualified relator under the statute and then assess damages. It makes sense in judicial economy too to have the criminal court, but it doesn't matter my opinion. The statute says if the government pursues an alternate remedy, then she shall adjudicate those claims in the alternate remedy court. I follow then you're putting all of your argument in the basket of this is an alternate remedy. Absolutely. All right. And when you compare the indictments to the complaints that we filed, you will see that the allegations match up substantially. Substantial amount of overlap. And with respect to the dollars at issue, again, federal health care dollars. That was that's what was at issue in the criminal matter. And that's what's at issue in the Ketan matter as well. Any further questions? Okay. Mr. Vaughn, you've saved three minutes for rebuttal. We're going to hear from Mr. Scarborough. May it please the court. Charles Scarborough, Department of Justice for the United States. With me at council table is Deborah Griffin from the United States Attorney's Office in Mobile. She was on one of the team that tried the criminal case. The district court properly denied Ms. Carver's motion to intervene in the criminal forfeiture proceeding. As this court has been discussing with opposing counsel, there are statutes that regulate when someone may intervene in a criminal forfeiture proceeding. 21 U.S.C. 853K expressly forbids parties from intervening absent certain circumstances enumerated in 853N. And they concede, I think, that they don't meet those circumstances. Their argument, as you pointed out, Judge Baldock, at the end, is basically that there is a separate provision, the alternate remedy provision, in the False Claims Act that essentially trumps the more specific provision applicable to intervention in criminal proceedings that allows them to come in. Counsel, I don't see it necessarily as a trump. What's bothering me, and I think the court right now, is when it talks about any alternate remedy. So what is the definition of a remedy in regards to what the court has to look at? Because you have the criminal statutes and you have the false claims, neither of the twain shall meet normally. But Congress, in its divine wisdom, says any alternate remedy, pretty clear, that gives her the right maybe to come in and try her K-10 action in a criminal proceeding. Sounds strange to me, but why isn't this an alternate remedy? Well, no court has agreed with that. And I think part of my answer goes to what Judge Pryor was saying initially, is that a criminal proceeding is designed first and foremost to punish people. I mean, the reason for this criminal proceeding was to put these guys who were operating a pill mill into jail. But the statute doesn't expressly exclude criminal proceedings, does it? The statute doesn't expressly exclude them, but it doesn't include them either. And it refers, we're now talking about 3730C5, the alternate remedy provision. It says that the government may elect to pursue its claim through any alternate remedy available to the government, including any administrative proceeding to determine a civil money proceeding. But including would indicate. But my point is simply that it's evidence. It's textual evidence that what Congress had in mind was an administrative sort of proceeding. It's talking about a remedial proceeding. Yes. Let's ask the question this way. Let's say the government gets the property. The property is forfeited to the government. Does that in any way act as a bar to the claim that the putative intervener would pursue? And it's false claims action. It's QTAM action. Are they able to, is the defendant in that action able to say, oh, it's already, the obligation is already, the debt has already been satisfied? And that's, thank you for making that point. The alternate remedy cases, first of all, I want to make a threshold. They all, when you look at the alternate remedy cases, Bledsoe in the Sixth Circuit, Barajas in the Ninth Circuit, they all arise from the QTAM action. These alternate remedy determinations are made in the Civil False Claims Act action. There are no cases where they make the determination in the criminal case. But when the property has been forfeited by virtue of that, there has not been a remedy for that debt. That's correct. And the point that I really want to emphasize. If the United States wanted to pursue a False Claims Act claim for this debt, it could do so. Absolutely, Your Honor. And the main point here, if I can get nothing else across, is that the government has not obstructed the QTAM action. The QTAM action is continuing forward. They have, as you said, they have the faults, but they don't have a judgment entered there because they still have to prove up their claims. But you're saying that basically the alternative remedy that's available to her is the QTAM action. I mean, the QTAM statute allows for an alternative remedy, which would indicate to me that there must be something other than a QTAM action to serve as an alternative remedy. Do you agree with that? Well, just to be clear, I'm not saying that the QTAM action is an alternate remedy. What we're saying is that the criminal action is not. And really, I want to emphasize this point also. You're saying that her remedy, that her only remedy in this case is to go back to the QTAM action. No? I mean, the False Claims Act gives her a right to sue as a partial assignee on behalf of the government. So back to my question. I mean, it's just circular. The QTAM statute says, you know, if the government chooses an alternative remedy, then she has full rights in that action. And you're saying the only way she can proceed now is to go back to the QTAM action. The reason for that, Your Honor, is that the criminal action isn't an alternate remedy. And I don't think that's a circular thing to say. What would be another? An alternate remedy, again, as contemplated by Congress, is something like an administrative remedy. There are statutes that allow, for instance, the Department of Health and Human Services to prosecute health care fraud and take an administrative proceeding. You know, if the government shut down the QTAM and then said, I'm going to go through this administrative enforcement proceeding, that's precisely the sort of circumstance in which 3735 would allow you to say, I want some share of that. You can't cut me out of the relationship. What options does Ms. Carver have now? Her option now is to prosecute the QTAM, just like you would normally have. There's no unfairness in that.  Yes, Your Honor. But again, when you say just the QTAM, that's a powerful tool to have another person to sue on behalf of the government. It's important to remember, this is the government's claim. She only gets money if the government gets money. And she has to prove up her claim. The alternate remedy provision is, first and foremost, not a way of sort of short-circuiting the proof you need to make in the False Claims Act case and pointing to something else that you want a piece of over there. So if she were to prevail in the False Claim and the QTAM action and get full satisfaction of the judgment, a portion of that would go to the government? Yes, a large portion would go to the government. That's the way the statute allocates it. In a non-intervened case, she would get between 25 and 30 percent of the recovery. But it's a practical matter. They forfeited everything, didn't they?  Yes, Your Honor. I mean, again, I don't want to stray outside the record. But, yes, there's a pending appeal of the criminal case. The money currently sits in the DOJ Asset Forfeiture Fund. But it's also important to note that when the government takes a criminal case and does forfeiture proceedings, there's restitution that gets paid to lots of people. And there's a federal statute that says the restitution goes first to the non-federal parties. So there may not actually be any money that goes to the government as a result of the criminal forfeiture action once all the restitution is paid out. But that works no unfairness to the relator. So you're saying if she gets a judgment in the QTAM, then she can come into the forfeiture proceeding? No, she cannot come into the forfeiture proceeding. And, again, the cases that talk about alternate remedies, Bledsoe, Barajas, LaCourte in the Fourth Circuit, they all arise in the context of a Civil False Claims Act action where the relator says, I have a valid claim and the government is basically seeking a substitute remedy somewhere else. And they're primarily administrative proceedings or like a global settlement of another QTAM. That's the sort of textbook scenario in which this arises. And the relator says, well, you're frustrating my right to recover in my case. I think I should get a share of that thing. In no event in any of these cases does the relator get to barge into criminal proceedings. And I want to emphasize, you haven't talked about the Van Dyck case in the Ninth Circuit. Yeah, that's really the closest case, isn't it? That's the closest on-point case we have, right? It's sad that it's taken me this long to actually mention our best case, but that is our best case for sure. We kept you busy. It also emphasizes the limited nature of what we're asking here. The Van Dyck court properly said it didn't have to decide for all time on a global basis whether a criminal forfeiture action could ever be an alternate remedy. It just had to affirm the denial of intervention in the criminal action. That's all we're asking this court to do here. Because there's actually a specific statute that regulates that intervention, and that specific statute, even by the putative intervener's own concession, does not allow for intervention. Correct, Your Honor. And there's not some leapfrogging over that statute from the alternate remedy. I agree. I mean, I think that Ms. Carter's got problems with the forfeiture statute. But just entertain me. Give me the list of alternative remedies that the government could seek other than a ketamine that the relator could participate in. Well, I think it's primarily administrative proceedings like the HHS proceeding that I was talking about. What about a civil proceeding? What if the government sued the defendant for the false claim? So it wasn't being pursued ketamine on the relation of the government. The government sued in its own right. Would that be an alternate? I think that could potentially be. Again, the cases talk about whether it is a substitute for the ketamine. So a critical part of this, and I want to go to the statutory language here, and it's the second sentence of 3730C5. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section. So that is a strong implication from the text of the statute that really the ketamine is in some way being shut down or impeded, and that's what the cases affirm, is that it's a substitute remedy. Ms. Carver can proceed. If the government were pursuing the claim on its own, decided to pursue the same claim, and were to obtain satisfaction of the debt through a judgment, that really would operate as a defense to the False Claims Act. In those circumstances, what would happen at the end, and I want to make very clear, this would happen in the Civil False Claims Act case, not in the alternate proceeding, is the defendant would seek a credit for what the government had already got from him in whatever that alternate proceeding was, administrative or civil, whatever it was, and then the relater would be, if that credit was honored, the relater would be entitled to claim a share, a relater share, 25 to 30 percent of whatever that credit was. That's the way these work, but that's all something that happens at the tail end of a properly pled False Claims Act action that succeeds. Let me stop you there. I'll give you a chance to catch your breath. Sure, sorry. What bothers me is that the government has got, in a criminal proceedings, a total forfeiture proceedings, and it's all going to be forfeited, and it's going to become the government's property. Now, move over to the KTM action. Is the government going to come in and argue that you still have to prove all of these elements before you get any of this money? Whose side are you going to be on in that KTM Act when you could have joined in that initially? So it's a declined KTM case, and one textual indication of how a criminal action is not credible. Answer my question. Where are you going to be in the KTM Act? You own the property. The government owns the property that's been forfeited now. What claim, if it's not an alternative, what claim then does she have? She's still got to prove up her total claim of which you can oppose. That's correct, Your Honor. The last part of that then, any finding of fact or conclusional law made in such other proceedings that has become final shall be conclusive on all the parties. So you're arguing that you're not bound by that. You can argue against her in the KTM action. I'm not arguing that we're not bound by that. I think that she can use findings in the criminal case to the extent there's overlap. One of the hard questions here is how much is there overlap, whether she has a valid KTM. There's public disclosure issues. Those are False Claims Act issues. The public disclosure bar, she can satisfy that, whether she's an original source. Those are all False Claims Act issues. Before you get to these difficult questions at the end of the day, what I'm telling the court is that it's the government's practice that if at the end of the day she could recover and there's money that the government has recovered from something that it deems to be an alternate remedy, that the defendant would get a credit and she would get a piece of that. I should note that in this particular case, there's a lot of claims by non-federal parties who are victims. So there may well not be any money. I don't think there's going to be money. It's the result of the criminal forfeiture proceeding. Right now, the DOJ Asset Forfeiture Fund holds the money, but it's going to be paid out to lots of the injured parties and the government may get nothing. So there's a lot of opportunities here. I want to follow up on your response. I guess it was partly Judge Pryor's response. Another alternative remedy that the government could seek is a civil action. That would mean that the relator had approached the government, asked them to participate in the QTAM. The government has declined and then goes out and files a separate civil action. Is that what you think qualifies under this code section? I'm saying based on the cases, a lot of the alternate remedy cases involve a relator in one QTAM suit pointing to another QTAM suit that the government may or may not have intervened in and saying our stuff overlaps with that. We came first. We prompted that. But that's not an alternative remedy pursued by the government. Well, if you were to intervene in the case. Oh, if you intervened in one but not the other. Okay. All right. I was trying to respond to Judge Pryor's question about other things other than administrative proceedings. And so I think your point is well taken, Your Honor, that, yes, there are civil actions. There are other false claims act actions. But I'm still trying to get an alternative remedy that's not a QTAM action. Well, again, the administrative process. Okay. Is that the only other one? I mean, I'm at a loss to sort of, you know, imagine all possible alternate remedies. How about two? Well, I can give you two. No, you give me the administrative remedy and then you've gone back to the QTAM action. I want something other than a QTAM action. But, again, that's the sort of way the case has evolved. I know. Okay. So I'm thinking that there's one alternative remedy that you've given me, and that's the administrative remedy. The question before this Court is whether the – No, but I get to ask you questions. I have that. I'm not able to come up with anything else right now. Okay. All right. My time is well over. But I want to come back to the main – You've been answering questions from the Court. Sure. You take 30 seconds to wrap it up. Well, the wrap-up point is that the alternate remedy provision doesn't sort of short-circuit the process under the criminal statutes, which, you know, decide, you know, how you get to come into a criminal proceeding. And the alternate remedy provision isn't a shortcut by which you can sort of abandon your QTAM and say, I don't know what's going on over there. You have to have a valid claim. You have to prove overlap. And those are things that are decided in the Civil Faults Claims Act case, not in the criminal proceeding. And so all we're asking this Court to do is follow the Ninth Circuit's well-reasoned opinion in Van Dyke and affirm the denial of the motion to intervene, which would mean under your Court's jurisdictional rules that you would dismiss the appeal for lack of jurisdiction. Thank you, Alex. Thank you. Mr. Vaughan, you have three minutes. So at a minimum, they say we get to participate pursuant to Van Dyke. And that is that if the defendant doctors get a damage credit because of the damages that have been levied against them in the forfeiture proceeding, then Mrs. Carver can have a hearing before the QTAM Court to establish that she is a relator. And if she is, the relators share. I believe that's the government's position on that, and they've stated that in their brief. Your Honor brought up the point that they can't cite to any other form of alternate remedy besides administrative. There are three forms of remedy, civil, the QTAM action, administrative, and criminal. Right. The third of which is not a remedy. Your Honor, you point me to any action, any case law whatsoever, that would suggest that a criminal forfeiture proceeding is a remedial proceeding. I would benefit from it. Yes, Your Honor. The 86 amendments were passed by Congress as a safeguard provision for relators who have been down the journey like Mrs. Carver. She went to the government with these allegations. They encouraged her to file the complaint, and that's what she did. A year and eight months later, then they filed their False Claims Act. Then they moved to extend the seal period for three and a half years while the parallel criminal action proceeded to verdict. She was limited. She could not advance the QTAM case in any way, shape, or form to go after these assets, the same assets that the government was going after. So when they say no obstruction, no unfairness, Mrs. Carver wasn't able to litigate her case for three and a half years. I'm sorry, but does that have anything to do with a criminal forfeiture proceeding being remedial? We believe it does, Your Honor, because you look at the legislative history. The House in its report, and the House version is the alternate remedy provision that we have. The House report identified criminal proceedings as alternate proceedings. And then you go back to the language of the alternate remedy provision, and it says any, any alternate remedy, no restrictions whatsoever. If they wanted to exclude criminal forfeiture proceedings, they would have said that, but they didn't say it. They put no limitations on the avenues the government could pursue to seek damages related to health care fraud, which in this case, Judge, is exactly what they did. They went after these doctors for overprescribing medication, for falsifying their lab results, and they sought damages against them for health care fraud. That was the alternate remedy that the government secured in this case. And we'd ask the court to follow the structure that the alternate remedy provision provides for relators like Mrs. Carver and future relators. Thank you, Mr. Bowen. Thank you. We have your argument. Our next case is Rogers v. AWB Industries.